# Exhibit C

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA          :

    -v.-          :

                                                     S9 09 Cr. 524 (JSR)

KONSTANTIN YAROSHENKO, et al.,          :

            Defendants.          :

- - - - - - - - - - - - - - - - - - - - - - - - - - -X

       I, LOUIS J. MILIONE, Supervisory Special Agent, Drug Enforcement
Administration ("DEA"), pursuant to Title 28, United States Code, Section 1746, hereby
declare under penalty of perjury:

       1.     I make this affidavit in response to the pre-trial motion to dismiss
(and accompanying exhibits) filed by KONSTANTIN YAROSHENKO, the defendant, in
the above-captioned matter.

       2.     I am a Supervisory Special Agent with the DEA and am assigned to
the Special Operations Division. I have been with the DEA for approximately 13 years.
As a Supervisory Special Agent, I have participated in investigations involving, among
other things, the unlawful importation and distribution of controlled substances in
violation of 21 U.S.C. §§ 812, 841(a)(1), 846, 952, 959, 960 and 963.

       3.     I am currently a Group Supervisor for the Narcoterrorism Group –
Europe, Asia, and Africa. I held this position in May 2010 and was the supervisor of
DEA special agents who conducted an investigation into whether several individuals –
including the defendants in the above-captioned matter – were conspiring to transport
narcotics from Colombia to Liberia, with knowledge that a portion of those narcotics
would be imported into the United States. As alleged in the Indictment, certain of the
defendants agreed to pay money to Republic of Liberia National Security Agency
("RLNSA") officials (who were working in an undercover capacity) for safe passage of
narcotics from Colombia to Liberia. KONSTANTIN YAROSHENKO is charged in the
Indictment for his participation in this narcotics importation conspiracy.

       4.     The facts in this affidavit are based upon my own personal
observations, as well as on conversations I have had with other DEA special agents
involved in this investigation. Since this affidavit is made for the limited purpose of
responding to YAROSHENKO's pre-trial motions, I have not set forth each and every
fact learned during the course of this investigation. Unless otherwise indicated, where
actions, conversations and statements of others are related herein, they are related in

1

substance and in part.

5.    Based on conversations with the DEA special agents assigned to this matter, and based on conversations with RLNSA officers, I am aware that YAROSHENKO was arrested by RLNSA officers on or about the evening of May 28, 2010 at RLNSA Headquarters, in Monrovia, Liberia.  I was not present for this arrest.

6.    On May 30, 2010 at approximately 11:30 a.m. (Liberia time), I, along with other DEA special agents, went to RLNSA Headquarters, in Monrovia, Liberia.  We met with RLNSA officials to discuss the arrests of YAROSHENKO and four other individuals (the "Additional Defendants") (collectively the "Defendants") who are named in Indictments in this District.[1]

7.    During this meeting, we discussed transferring custody of the Defendants from RLNSA to DEA and we obtained permission to "process" each of the Defendants at RLNSA Headquarters.[2]  This meeting lasted about an hour and RLNSA then brought us to a conference room on the first floor of RLNSA Headquarters (the "RLNSA Conference Room") to process each Defendant.  Once we arrived at the RLNSA Conference Room, RLNSA officers brought each Defendant to the Conference Room for processing, one at a time.

8. I was present for the processing of YAROSHENKO. When YAROSHENKO arrived at the RLNSA Conference Room, he was in handcuffs. After he arrived, we removed the handcuffs.  We then directed him to remove his clothing so that we could conduct a visual search of his body for any weapons or contraband.  During the physical examination of YAROSHENKO, I did not observe any bruises, wounds, or injuries on YAROSHENKO's body or face that indicated he was mistreated or abused while in RLNSA custody (from May 28-30, 2010).  In addition, during his processing, YAROSHENKO never advised me – or anyone else in my presence – that he had been mistreated while in RLNSA custody.  Furthermore, I did not observe – nor am I aware of – anyone mistreating YAROSHENKO at RLNSA Headquarters.  And, no one from RLNSA advised me or anyone else, to my knowledge, that YAROSHENKO had been mistreated while in RLNSA custody.

9.    Attached as Exhibit 1 to my Affidavit are three photographs of YAROSHENKO (bearing labels 1 to 3) that were taken while YAROSHENKO was processed at RLNSA Headquarters on May 30, 2010.  The time/date stamps on the

---

[1]    One individual was YAROSHENKO's co-defendant Chigbo Peter Umeh. The other three individuals were Ali Sesay, Gennor Jalloh, and Gilbrilla Kamara, who are defendants in *United States* v. *Gilbrilla Kamara*, 10 Cr. 457 (WHP).

[2]    Processing includes fingerprinting, obtaining basic pedigree information, and conducting a visual search for weapons or other contraband.

lower right hand corner of these photographs reflect the time/date (in Liberia) on which these photographs were taken. As indicated by these time/date stamps, the photographs were taken in the early afternoon on May 30, 2010.

10.     After the Defendants were processed, RLNSA then brought them onto a bus that was outside RLNSA Headquarters. I, along with DEA special agents and RLNSA officials, also boarded the bus. The bus, along with a convoy of RLNSA vehicles, drove directly from RLNSA Headquarters to Roberts International Airport in Liberia (the "Airport"). The entire drive lasted approximately one hour. At no point during the bus ride to the Airport did I observe anyone physically assault or otherwise mistreat YAROSHENKO.

11.     Once we arrived at the Airport, we waited approximately two hours before boarding a plane that was destined for Stewart International Airport, in Newburgh, New York. The Defendants remained on the bus – which was air-conditioned – during this two hour period. Attached to my affidavit as Exhibit 1 are two photographs of YAROSHENKO (bearing labels 4 and 5) that were taken while YAROSHENKO was at the Airport (in the bus and walking off the bus). At no point during this two hour delay did I observe anyone physically assault or otherwise mistreat YAROSHENKO.

12.     At approximately 5:20 p.m. (Liberia time), I, along with other DEA special agents, accompanied YAROSHENKO onto the plane. Attached to my affidavit as Exhibit 1 (bearing labels 6 and 7) are two photographs of YAROSHENKO that were taken while YAROSHENKO was walking onto the plane and while he was inside the plane. The flight departed Monrovia, Liberia at approximately 5:40 p.m. (Liberia time) and landed at Stewart International Airport in Newburgh, New York, at approximately 11:20 p.m. (New York time), on May 30, 2010.

13.     The flight lasted approximately 10 hours. During the flight, I observed YAROSHENKO sleep and eat. I did not observe anyone physically abuse or mistreat YAROSHENKO during the course of this flight. Each Defendant on the flight was offered food and was permitted to watch movies (and were given headphones for this purpose).

14.     After the flight landed at Stewart International Airport, I, along with other DEA special agents, accompanied the Defendants to meet with Customs and Border Protection agents, so that they could be permitted entry into the United States. Before we proceeded to the Customs agents, YAROSHENKO requested to use the restroom. I observed DEA special agents accompany YAROSHENKO to the restroom. Both YAROSHENKO and these agents were visible to me while they were in the restroom, which was for a very brief period. At no time did I observe the agents physically abuse or otherwise mistreat YAROSHENKO.

15.     After the Customs agents permitted us entry to the United States, I

brought YAROSHENKO to a van.  Attached as Exhibit 1 to my Affidavit are three photographs of YAROSHENKO (bearing labels 8 - 10) that were taken of YAROSHENKO after he disembarked the plane at Stewart International Airport and before he entered the van.  I entered the van with YAROSHENKO and we drove directly from Stewart International Airport to the Metropolitan Correctional Center ("MCC") in New York, New York.  Once we arrived at the MCC (in the early morning of May 31, 2010), we transferred custody of YAROSHENKO to the MCC.

16.     In the morning of June 1, 2010, I, along with other DEA special agents, returned to the MCC.  After arriving at the MCC, we took custody of YAROSHENKO and brought him to the United States District Court for the Southern District of New York ("SDNY"), so that he could be presented on the charges in the Indictment before a judge.  When we arrived at SDNY, we transferred custody of YAROSHENKO to the United States Marshals Service (the "USMS"), at 500 Pearl Street, New York, New York.

17.     After transferring custody of YAROSHENKO to the USMS, I and other DEA special agents stayed at SDNY and saw YAROSHENKO be presented before United States Magistrate Judge Debra Freeman on June 1, 2010.

****

18.     In sum, and as discussed more fully above, at no point did I witness any DEA special agent, RLNSA official, or anyone else, physically abuse or mistreat YAROSHENKO.  Further, I never observed any bruises, wounds, or injuries on YAROSHENKO's body or face that indicated he had been physically abused or mistreated.  In addition, at no time during my involvement in this investigation did YARSHENKO ever state to me – or (to my knowledge) to any DEA special agent – that he had been mistreated by RLNSA officials or by DEA special agents.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on
this 27 day of October 2010

Chantilly, Virgina

_____
Louis J. Milione
Supervisory Special Agent, DEA

4



MAY 30 2010 13:15

00000001

MAY 30 2010 13:14

00000002

MAY 30 2010 13:14

00000003



00000004



00000005



00000006



MAY 30 2010 18:42

00000007



00000008



00000009



00000010