# Exhibit F

**TREATY**
**BETWEEN**
**THE UNITED STATES OF AMERICA**
**AND**
**UKRAINE**
**ON**
**MUTUAL LEGAL ASSISTANCE IN CRIMINAL MATTERS**

2

## TABLE OF CONTENTS

| | |
|---|---|
| Article 1 | Scope of Assistance |
| Article 2 | Central Authorities |
| Article 3 | Limitations on Assistance |
| Article 4 | Form and Contents of Requests |
| Article 5 | Execution of Requests |
| Article 6 | Costs |
| Article 7 | Limitations on Use |
| Article 8 | Testimony or Evidence in the Requested State |
| Article 9 | Official Records |
| Article 10 | Testimony or Evidence Outside the Requested State |
| Article 11 | Transfer of Persons in Custody |
| Article 12 | Transit of Persons in Custody |
| Article 13 | Location or Identification of Persons or Items |
| Article 14 | Service of Documents |
| Article 15 | Search and Seizure |
| Article 16 | Return of Items |
| Article 17 | Assistance in Forfeiture Proceedings |
| Article 18 | Compatibility with Other Treaties |
| Article 19 | Consultation |
| Article 20 | Ratification, Entry Into Force, and Termination |
| Annex | |

3

The United States of America and Ukraine,

Desiring to improve the effectiveness of the competent authorities of both countries in the investigation, prosecution, and prevention of crime through cooperation and mutual legal assistance in criminal matters,

Have agreed as follows:

## ARTICLE 1
## SCOPE OF ASSISTANCE

1.     The Contracting States shall provide mutual assistance, in accordance with the provisions of this Treaty, in connection with the investigation, prosecution, and prevention of offenses, and in proceedings related to criminal matters.

2.     Assistance shall include:

(a)  taking the testimony or statements of persons;

(b)  providing documents, records, and other items;

(c)  locating or identifying persons or items;

(d)  serving documents;

(e)  transferring persons in custody for testimony or other purposes;

(f)  executing searches and seizures;

(g)  assisting in proceedings related to immobilization and forfeiture of assets, restitution, and collection of fines; and

(h)  any other form of assistance not prohibited by the laws of the Requested State.

3.     Assistance shall be provided without regard to whether the conduct that is the subject of the investigation, prosecution, or proceeding in the Requesting State would constitute an offense under the laws of the Requested State.

4.     This Treaty is intended solely for mutual legal assistance between the Contracting States. The provisions of this Treaty shall not give rise to a right on the part of any private person to obtain, suppress, or exclude any evidence, or to impede the execution of a request.

## ARTICLE 2
## CENTRAL AUTHORITIES

1.     Each Contracting State shall have a Central Authority to make and receive requests pursuant to this Treaty.

2.     For the United States of America, the Central Authority shall be the Attorney General or a person designated by the Attorney General. For Ukraine, the Central Authority shall be the Ministry of Justice and the Office of the Prosecutor General.

3.     Each Central Authority shall make only such requests as it considers and approves. The Central Authority for the Requesting State shall use its best efforts to ensure that a request is not made where, in its view:

4

- 2 -

(a) the offense on which the request is based does not have serious consequences; or

(b) the extent of the assistance to be requested is disproportionate to the sentence expected upon conviction.

4.      The Central Authorities shall communicate directly with one another for the purposes of this Treaty.

## ARTICLE 3
## LIMITATIONS ON ASSISTANCE

1.      The Central Authority of the Requested State may deny assistance if:

(a) the request relates to an offense under military law that would not be an offense under ordinary criminal law;

(b) the request relates to a political offense;

(c) the execution of the request would prejudice the security or similar essential interests of the Requested State; or

(d) the request does not conform to the requirements of this Treaty.

2.      Before denying assistance pursuant to this Article, the Central Authority of the Requested State shall consult with the Central Authority of the Requesting State to consider whether assistance can be given subject to such conditions as it deems necessary. If the Requesting State accepts assistance subject to these conditions, it shall comply with the conditions.

3.      If the Central Authority of the Requested State denies assistance, it shall inform the Central Authority of the Requesting State of the reasons for the denial.

## ARTICLE 4
## FORM AND CONTENTS OF REQUESTS

1.      A request for assistance shall be in writing except that the Central Authority of the Requested State may accept a request in another form in urgent situations. If the request is not in writing, it shall be confirmed in writing within ten

days unless the Central Authority of the Requested State agrees otherwise. The request shall be in the language of the Requested State unless otherwise agreed.

2.      The request shall include the following:

(a) the name of the authority conducting the investigation, prosecution, or proceeding to which the request relates;

(b) a description of the nature and subject matter of the investigation, prosecution, or proceeding, and the applicable provisions of law for each offense;

(c) a description of the evidence, information, or other assistance sought; and

(d) a statement of the purpose for which the evidence, information, or other assistance is sought.

3.      To the extent necessary and possible, a request shall also include:

5

- 3 -

(a) information on the identity and location of any person from whom evidence is sought;

(b) information on the identity and location of a person to be served, that person's relationship to the proceedings, and the manner in which service is to be made;

(c) information on the identity and suspected location of a person or item to be located;

(d) a precise description of the place or person to be searched and of the item to be seized;

(e) a description of the manner in which any testimony or statement is to be taken and recorded;

(f) a description of the testimony or statement sought, which may include a list of questions to be asked of a person;

(g) a description of any particular procedure to be followed in executing the request, including certifications specified in Articles 8, 9, and 15 of this Treaty through completion of the appropriate forms annexed to this Treaty;

(h) information as to the expenses related to travel and subsistence of a person asked to appear outside the Requested State; and

(i) any other information that may be brought to the attention of the Requested State to facilitate its execution of the request.

### ARTICLE 5
### EXECUTION OF REQUESTS

1.      The Central Authority of the Requested State shall promptly execute the request or, when appropriate, shall transmit it to the authority having jurisdiction to do so. The competent authorities of the Requested State shall do everything in their power to execute the request. The competent authorities of the Requested State shall have authority to issue subpoenas, search and arrest warrants, or other orders necessary to execute the request.

2.      The Central Authority of the Requested State shall represent or make arrangements for representation of the interests of the Requesting State in the execution in the Requested State of a request for assistance.

3.      Requests shall be executed in accordance with the laws of the Requested State except to the extent that this Treaty provides otherwise. However, the method of execution specified in the request shall be followed except insofar as it is prohibited by the laws of the Requested State.

4.      If the Central Authority of the Requested State determines that execution of a request would interfere with an ongoing criminal investigation, prosecution, or proceeding in that State, it may postpone execution, or make execution subject to conditions determined to be necessary after consultations with the Central Authority of the Requesting State. If the Requesting State accepts the assistance subject to the conditions, it shall comply with the conditions.

5.      The Requested State shall use its best efforts to keep confidential a request and its contents if such confidentiality is requested by the Central Authority of the Requesting State. If the request cannot be executed without breaching such

6

- 4 -

confidentiality, the Central Authority of the Requested State shall so inform the Central Authority of the Requesting State, which shall then determine whether the request should nevertheless be executed.

6.      The Central Authority of the Requested State shall respond to reasonable inquiries by the Central Authority of the Requesting State concerning progress toward execution of the request.

7.      The Central Authority of the Requested State shall promptly inform the Central Authority of the Requesting State of the outcome of the execution of the request. If the execution of the request is denied, delayed, or postponed, the Central Authority of the Requested State shall inform the Central Authority of the Requesting State of the reasons for the denial, delay, or postponement.

## ARTICLE 6
## COSTS

1.      The Requested State shall pay all costs relating to the execution of the request, except for the following:

(a)  the fees of experts;

(b)  the costs of interpretation, translation, and transcription; and

(c)  the expenses related to travel and subsistence of persons travelling either in the Requested State for the convenience of the Requesting State or pursuant to Articles 10 and 11 of this Treaty.

2.      If during the execution of a request it becomes apparent that complete execution will entail expenses of an extraordinary nature, the Central Authorities shall consult to determine the terms and conditions under which execution may continue.

## ARTICLE 7
## LIMITATIONS ON USE

1.      The Central Authority of the Requested State may require that the Requesting State not use any evidence or information obtained under this Treaty in any investigation, prosecution, or proceeding other than that described in the request without the prior consent of the Central Authority of the Requested State. In such situations, the Requesting State shall comply with the requirement.

2.      The Central Authority of the Requested State may request that evidence or information furnished under this Treaty be kept confidential or be used only subject to terms and conditions that it may specify. If the Requesting State accepts the evidence or information subject to such conditions, the Requesting State shall use its best efforts to comply with the conditions.

3.      Nothing in this Article shall preclude the use or disclosure of evidence or information to the extent that there is an obligation to do so under the Constitution of

the Requesting State in a criminal prosecution. The Requesting State shall notify the Requested State in advance of any such possible use or disclosure.

7

- 5 -

4.    Evidence or information that has been made public in the Requesting State in a manner consistent with paragraph 1 or 2 of this Article may thereafter be used for any purpose.

## ARTICLE 8
## TESTIMONY OR EVIDENCE IN THE REQUESTED STATE

1.    A person in the Requested State from whom testimony or evidence is requested pursuant to this Treaty shall be compelled, if necessary, to appear and testify or produce items, including documents and records. A person who gives false testimony, either orally or in writing, in execution of a request shall be subject to prosecution in the Requested State in accordance with the criminal laws of that State.

2.    Upon request, the Central Authority of the Requested State shall furnish information in advance about the date and place of the taking of the testimony or evidence pursuant to this Article.

3.    The Requested State shall permit the presence of such persons as specified in the request during the execution of the request, and shall allow such persons to question the person giving the testimony or evidence.

4.    If the person referred to in paragraph 1 asserts a claim of immunity, incapacity, or privilege under the laws of the Requesting State, the testimony or evidence shall nonetheless be taken and the claim made known by written notification to the Central Authority of the Requesting State for resolution by the competent authorities of that State.

5.    If specified in a request, evidence produced in the Requested State pursuant to this Article or referred to in testimony taken under this Article shall be certified by the appropriate form attached to the request. Business records certified as authentic by the appropriate form, or the form certifying the absence or non-existence of such records, shall be admissible in evidence in the Requesting State as proof of the matters set forth therein.

## ARTICLE 9
## OFFICIAL RECORDS

1.    The Requested State shall provide the Requesting State with copies of publicly available records, including documents or information in any form, in the possession of government departments and agencies in the Requested State.

2.    The Requested State may provide copies of any records, including documents or information in any form, that are in the possession of a government department or agency in that State, but that are not publicly available, to the same extent and under the same conditions as such copies would be available to its own law enforcement or judicial authorities. The Requested State may in its discretion refuse to execute, entirely or in part, a request for records not publicly available.

3.    If specified in a request, evidence produced in the Requested State pursuant to this Article shall be certified by the appropriate form attached to the request. Official records certified as authentic by the appropriate form, or the form certifying the absence or non-existence of such records, shall be admissible in evidence in the Requesting State as proof of the matters set forth therein.

8

- 6 -

## ARTICLE 10
## TESTIMONY OR EVIDENCE OUTSIDE THE REQUESTED STATE

1.      When the Requesting State requests the appearance of a person in that State or in a third State, the Requested State shall invite the person to appear before the appropriate authority in the Requesting or in the third State. The Central Authority of the Requested State shall promptly inform the Central Authority of the Requesting State of the person's response.

2.      The Requesting State shall indicate the extent to which the person's expenses will be paid. A person who agrees to appear may ask that the Requesting State advance money to cover these expenses. This advance may be provided through the Embassy or a consulate of the Requesting State.

3.      The Central Authority of the Requesting State may, in its discretion, determine that a person appearing in the Requesting State pursuant to this article shall not be subject to service of process, or be detained or subjected to any restriction of personal liberty, by reason of any acts or convictions that preceded the person's departure from the Requested State.

4.      The safe conduct provided for by this Article shall cease after a competent authority of the Requesting State has notified a person appearing pursuant to this Treaty that the person's presence is no longer required, and that person, being free to leave, has not left within seven days or, having left, has voluntarily returned.

## ARTICLE 11
## TRANSFER OF PERSONS IN CUSTODY

1.      A person in the custody of the Requested State whose presence in the Requesting State or in a third State is sought for purposes of assistance under this Treaty shall be transferred from the Requested State to the Requesting State or to the third State for that purpose if the person consents and if the Central Authorities of both States agree.

2.      A person in the custody of the Requesting State whose presence in the Requested State is sought for purposes of assistance under this Treaty may be transferred from the Requesting State to the Requested State if the person consents and if the Central Authorities of both States agree.

3.      For purposes of this Article:

(a) the receiving State shall have the authority and the obligation to keep the person transferred in custody unless otherwise agreed by both Central Authorities;

(b) the receiving State shall return the person transferred to the custody of the sending State as soon as circumstances permit or as otherwise agreed by both Central Authorities;

(c) the receiving State shall not require the sending State to initiate extradition or any other proceedings for the return of the person transferred; and

(d) time served in the custody of the receiving State by the person transferred shall be credited toward the service of the sentence imposed in the sending State and shall not exceed the time remaining to be served on that sentence.

9

- 7 -

## ARTICLE 12
## TRANSIT OF PERSONS IN CUSTODY

1.     The Requested State may authorize the transit through its territory of a person held in custody by a third State whose personal appearance has been requested by the Requesting State to give testimony or evidence or otherwise provide assistance in an investigation, a prosecution, or a proceeding related to a criminal matter.

2.     The Requested State shall have the authority and the obligation to keep the person in custody during transit.

3.     Each Contracting State may refuse to grant transit of its nationals.

## ARTICLE 13
## LOCATION OR IDENTIFICATION OF PERSONS OR ITEMS

If the Requesting State seeks the location or identity of persons or items in the Requested State, the Requested State shall use its best efforts to ascertain the location or identity.

## ARTICLE 14
## SERVICE OF DOCUMENTS

1.     The Requested State shall use its best efforts to effect service of any document relating, in whole or in part, to any request for assistance made by the Requesting State under the provisions of this Treaty.

2.     The Requesting State shall transmit any request for the service of a document requiring the appearance of a person before an authority in the Requesting State a reasonable time before the scheduled appearance.

3.     The Requested State shall return a proof of service to the Requesting State in the manner specified in the Request.

## ARTICLE 15
## SEARCH AND SEIZURE

1.     The Requested State shall execute a request for the search, seizure, and transfer of any item to the Requesting State if the request includes the information justifying such action under the laws of the Requested State.

2.     If specified in a request, every official in the Requested State who has had custody of a seized item shall certify, through the use of a form attached to the request, the identity of the item, the continuity of custody, and any changes in condition. Such certificates shall be admissible in evidence in the Requesting State as proof of the matters set forth therein.

3.     The Central Authority of the Requested State may require that the Requesting State agree to the terms and conditions deemed necessary to protect third party interests in the item to be transferred.

10

- 8 -

## ARTICLE 16
## RETURN OF ITEMS

The Central Authority of the Requested State may require that the Central Authority of the Requesting State return, as soon as possible, any items, including documents and records, furnished to it in execution of a request under this Treaty.

## ARTICLE 17
## ASSISTANCE IN FORFEITURE PROCEEDINGS

1.      If the Central Authority of one Contracting State becomes aware of proceeds or instrumentalities of offenses that are located in the other State and may be forfeitable or otherwise subject to seizure under the laws of that State, it may so inform the Central Authority of the other State. If the State receiving such information has jurisdiction in this regard, it may present this information to its authorities for a determination whether any action is appropriate. These authorities shall issue their decision in accordance with the laws of their country. The Central Authority of the State that received the information shall inform the Central Authority of the State that provided the information of the action taken.

2.      The Contracting States shall assist each other to the extent permitted by their respective laws in proceedings relating to the forfeiture of the proceeds and instrumentalities of offenses, restitution to the victims of crime, and the collection of fines imposed as sentences in criminal prosecutions. This may include action to temporarily immobilize the proceeds or instrumentalities pending further proceedings.

3.      The Contracting State that has custody over proceeds or instrumentalities of offenses shall dispose of them in accordance with its laws. Either Contracting State may transfer all or part of such assets, or the proceeds of their sale, to the other State, to the extent permitted by the transferring State's laws and upon such terms as it deems appropriate.

## ARTICLE 18
## COMPATIBILITY WITH OTHER TREATIES

Assistance and procedures set forth in this Treaty shall not prevent either Contracting State from granting assistance to the other Contracting State through the provisions of other applicable international agreements, or through the provisions of its national laws. The Contracting States may also provide assistance pursuant to any bilateral arrangement, agreement, or practice that may be applicable.

## ARTICLE 19
## CONSULTATION

The Central Authorities of the Contracting States shall consult, at times mutually agreed to by them, to promote the most effective use of this Treaty. The Central Authorities may also agree on such practical measures as may be necessary to facilitate the implementation of this Treaty.

## ARTICLE 20
## RATIFICATION, ENTRY INTO FORCE, AND TERMINATION

1.      This Treaty shall be subject to ratification, and the instruments of ratification shall be exchanged at Washington as soon as possible.

11

- 9 -

2.     This Treaty shall enter into force upon the exchange of instruments of ratification.

3.     Either Contracting State may terminate this Treaty by means of written notice to the other Contracting State. Termination shall take effect six months following the date of notification.

IN WITNESS WHEREOF, the respective plenipotentiaries have signed this Treaty.

DONE at Kyiv this twenty-second day of July, 1998, in duplicate in the English and Ukrainian languages, both texts being equally authentic.

FOR THE UNITED STATES          FOR UKRAINE:
OF AMERICA:

12

**ANNEX
TO THE TREATY
BETWEEN
THE UNITED STATES OF AMERICA
AND
UKRAINE
ON
MUTUAL LEGAL ASSISTANCE IN CRIMINAL MATTERS**

13

Form A:    Certification of Business Records

Form B:    Certification of Absence or Non-Existence of Business Records

Form C:    Certification of Official Records

Form D:    Certification of Absence or Non-Existence of Official Records

Form E:    Certification with respect to Seized Items

14

**FORM A**

**CERTIFICATION OF BUSINESS RECORDS**

I, __(name)__ having been advised as a witness that a false attestation subjects me to a penalty of criminal punishment, attest as follows:

I am employed by/associated with __(name of business from which documents are sought)__ in the position of __(business position or title)__ and by reason of my position am authorized and qualified to make this attestation.

Each of the records attached hereto is a record in the custody of the above-named business that:

(A)   was made, at or near the time of the occurrence of the matters set forth therein, by, or from information transmitted by, a person with knowledge of those matters;

(B)   was kept in the course of a regularly conducted business activity;

(C)   was made by the business as a regular practice; and,

(D)   if not an original record, is a duplicate of the original.

_____
(date of execution)

_____
(place of execution)

_____
(signature)

15

**FORM B**

**CERTIFICATION OF ABSENCE OR NON-EXISTENCE OF BUSINESS RECORDS**

I, ___(name)___, having been advised as a witness that a false attestation subjects me to a penalty of criminal punishment, attest as follows:

I am employed by/associated with ___(name of business from which documents are sought)___ in the position of ___(business position or title)___ and by reason of my position am authorized and qualified to make this attestation.

As a result of my employment/association with the above-named business, I am familiar with the business records it maintains. The business maintains business records that:

(A)    are made, at or near the time of the occurrence of the matters set forth therein by, or from information transmitted by, a person with knowledge of those matters;

(B)    are kept in the course of a regularly conducted business activity; and

(C)    are made by the business as a regular practice.

Among the records so maintained are records of individuals and entities that have accounts or otherwise transact business with the above-named business. I have made or caused to be made a diligent search of those records. No records have been found reflecting any business activity between the business and the following individuals and entities: _____.

If the business had maintained an account on behalf of or had participated in a transaction with any of the foregoing individuals or entities, its business records would reflect that fact.

_____
(date of execution)

_____
(place of execution)

_____
(signature)

16

**FORM C**

**CERTIFICATION OF OFFICIAL RECORDS**

I, __(name)__, certify as follows:

1. __(name of public authority)__ is a government office or agency of __(country)__ and is authorized by law to maintain official records setting forth matters authorized by law to be reported and recorded or filed;

2. my position with the above-named public authority is __(official title)__;

3. in my official capacity I have caused the production of true and accurate copies of records maintained by that public authority; and

4. those copies are described below and attached.

Description of records:

_____ (signature) _____

(Official Seal or Stamp)

_____ (date) _____

17

**FORM D**

**CERTIFICATION OF ABSENCE OR NON-EXISTENCE OF OFFICIAL
RECORDS**

I, __(name)__ , certify as follows:

1.  __(name of public authority)__  is a government office or agency of __(country)__
     and is authorized by law to maintain official records setting forth matters that are
     authorized by law to be reported and recorded or filed;

2.  records of the type described below set forth matters that are authorized by law to be
     reported and recorded or filed, and such matters regularly are recorded or filed
     by the above-named public authority;

3.  my position with the above-named public authority is __(official title)__;

4.  in my official capacity I have made, or caused to be made, a diligent search of the
     above-named public authority's records for the records described below; and

5.  no such records have been found to exist therein.

     Description of records:

_____
                (signature)

                                                        (Official Seal or Stamp)

_____
                (date)

18

**FORM E**

**CERTIFICATION WITH RESPECT TO SEIZED ITEMS**

I, __(name)__, having been advised as a witness that a false attestation subjects me to a penalty of criminal punishment, attest as follows:

1. I am employed by __(country)__ and my position or title is __(position or title)__;

2. I received custody of the items listed below from __(name of person)__ on __(date)__ at __(place)__; and

3. I relinquished custody of the items listed below to __(name of person)__ on __(date)__ at __(place)__ in the same condition as when I received them (or, if different, as noted below).

Description of items:

Changes in condition while in my custody:

_____
(date of execution)

_____
(place of execution)                              (Official Seal or Stamp)

_____
(signature)

19

**DEPARTMENT OF STATE**
**WASHINGTON**

September 30, 1999

Excellency:

    I have the honor to refer to the Treaty Between the United States of America and Ukraine on Mutual Assistance in Criminal Matters (hereafter "the Treaty") signed on July 22, 1998.

    The Government of the United States of America plans to submit the Treaty in the near future to the United States Senate for Senate advice and consent to ratification, and to seek favorable action by the Senate at the earliest possible date.  Because of the pressing need to enhance law enforcement cooperation between our two governments to the extent possible at this time, I have the honor to propose that until such time as the Treaty enters into force through an exchange of instruments of ratification between our governments as provided for under Article 20(2) of the Treaty, our governments apply the terms of the Treaty to the extent possible under the respective domestic laws of the United States and Ukraine.

    I have the further honor to propose that if the foregoing is acceptable to the Government of Ukraine, Your Excellency confirm this fact in a note in reply.


His Excellency

    Anton Buteiko,

        Ambassador of Ukraine.

20

- 2 -

Accept, Excellency, the renewed assurances of my
highest consideration.

For the Secretary of State:

21

*Unofficial translation*
*into English*

Your Excellency:

I have the honor to acknowledge receipt the note of Your Excellency's note dated of September 30, 1999 which reads as follows:

"I have the honor to refer to the Treaty between the United States of America and Ukraine on Mutual Assistance in Criminal Matters (hereafter "the Treaty") signed on July 22, 1998.

The Goverment of the United States of America plans to submit the Treaty in the near future to the Senate for Senate advice and consent for ratification, and to seek favorable action by the Senate at the earliest possible date. Because of the pressing need to enhance law enforcement cooperation between American and Ukrainian Parties to the extent possible at this time, I have the honor to propose that until such time as the Treaty enters into force through an exchange of instruments of ratification as provided for under Article 20(2) of the Treaty, American and Ukrainian Parties apply the terms of the Treaty to the extent possible under the respective domestic laws of the United States of America and Ukraine.

I have the further honor to propose that if the foregoing is acceptable to the Ukrainian Party, Your Excellency confirm this fact in a note in reply.

Accept, Your Excellency, the assurances of my highest consideration."

I have the honor to confirm that the proposal set forth in the note of Your Excellency is acceptable to the Ukrainian Party.

Accept, Your Excellency, the assurances of my highest consideration.

**Anton Buteyko**
**Ambassador**

**H.E. Madeleine Albright**
**The Secretary of State**

**O**