UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

                     :

UNITED STATES OF AMERICA,

                     :        S9 09 Cr. 524 (JSR)

       - v. -

                     :

KONSTANTIN YAROSHENKO,

                     :

          Defendant.

                     :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

# MEMORANDUM OF LAW OF THE UNITED STATES OF AMERICA IN OPPOSITION TO DEFENDANT'S MOTION FOR A NEW TRIAL

PREET BHARARA
United States Attorney for the
Southern District of New York

KATHERINE C. REILLY
RANDALL W. JACKSON
Assistant United States Attorneys
  *Of Counsel*

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................ 1

STATEMENT OF FACTS ..................................................................................................... 1

APPLICABLE LAW ............................................................................................................ 3

ARGUMENT ...................................................................................................................... 4

   I.   The Evidence Presented is Not "Newly Discovered" ...................................................... 4

      A.  Evidence Related to the Investigation and Arrest of the Defendant ............................... 5

      B.  Statements of Co-Defendant Umeh ............................................................................ 7

  II.  The Evidence Presented Is Not Material ..................................................................... 9

      A.  The Defendant's Motions to Dismiss the Indictment and Suppress Evidence ............... 9

      B.  Allegations of Perjury by Government Witnesses ...................................................... 12

      C.  Evidence of the Scope and Object of the Narcotics Trafficking Conspiracy ................ 15

 III.   The Admission of the Evidence Would Not Lead to Acquittal. .................................... 18

      A.  The Defendant's Claims of "Outrageous Government Conduct" ................................. 18

      B.  Suppression of Recordings Made in the Ukraine ...................................................... 22

      C.  The Sufficiency of the Evidence at Trial .................................................................. 23

 IV.   An Evidentiary Hearing is Not Necessary ................................................................. 24

CONCLUSION .................................................................................................................. 25

## **TABLE OF AUTHORITIES**

**Statutes and Regulations**

21 U.S.C. § 963 ................................................................................................. 1

22 U.S.C. § 2291(c)(1) ..................................................................................... 21

28 U.S.C. § 2255 .................................................................................. 16, 17, 18

Fed. R. Crim. P. 33 .................................................................................. passim

**Cases**

Adams v. United States, 155 F.3d 582 (2d Cir. 1998) ................................... 18

Alvarez v. United States, 808 F. Supp. 1066 (S.D.N.Y. 1992) ......................... 14, 15, 16

Brown v. Doe, 2 F.3d 1236 (2d Cir. 1993) ............................................... 19, 20

Frisbie v. Collins, 342 U.S. 519 (1952) ........................................................ 19

Ker v. Illinois, 119 U.S. 436 (1886) ............................................................. 19

Lopez v. United States, 373 U.S. 427 (1963) ................................................ 22

Matta-Ballesteros v. Henman, 896 F.2d 255 (7th Cir. 1990) ....................... 19

Ruth v. United States, 266 F.3d 658 (7th Cir. 2001) .................................... 18

Stowe v. Devoy, 588 F.2d 336 (2d Cir. 1978) .............................................. 23

United States v. Alessi, 638 F.2d 466 (2d Cir. 1980) ..................................... 3

United States v. Alvarez–Machain, 504 U.S. 655 ................................... 19, 20

United States v. Andreas, No. 96 Cr. 762 (BMM),
1998 U.S. Dist. LEXIS 1014 (N.D. Ill. Jan. 30, 1998) ................................. 22

United States v. Bourdet, 477 F. Supp. 2d 164 (D.D.C. 2007) ..................... 22

United States v. Bridgewater, 175 F. Supp. 2d 141 (D.P.R. 2001) ............... 22

United States v. Canova, 412 F.3d 331 (2d Cir. 2005) ......................... 3, 4, 15

United States v. Crews, 445 U.S. 463 (1980) ............................................................................. 20

United States v. DeFeo, No. 90 Cr. 250 (MJL),
1996 U.S. Dist. LEXIS 22523 (S.D.N.Y. Dec. 27, 1996) ..................................................... 16, 24

United States ex rel. Lujan v. Gengler, 510 F.2d 62 (2d Cir. 1975) ........................................ 20

United States v. Ferguson, 246 F.3d 129 (2d Cir. 2001) ........................................................ 3, 24

United States v. Gambino, 59 F.3d 353 (2d Cir. 1995) ........................................................... 3, 14

United States v. Ghavami, No. 10 Cr. 1217 (KMW),
2014 U.S. Dist. LEXIS 67124 (S.D.N.Y. May 15, 2014) ........................................................ 25

United States v. Helmsley, 985 F.2d 1202 (2d Cir. 1993) ......................................................... 25

United States v. Jacobs, 475 F.2d 270 (2d Cir 1973) ................................................................ 8

United States v. Klein, No. 03 Cr. 813 (LBS),
2007 U.S. Dist. LEXIS 58339 (S.D.N.Y. Aug. 7, 2007) ............................................................ 7

United States v. Lombardi, 524 F. Supp. 182 (E.D.N.Y. 1981) .................................................. 7

United States v. Maturo, 982 F.2d 57 (2d Cir. 1992) ............................................................... 23

United States v. Mejia, 448 F.3d 436 (D.C. Cir. 2006) ............................................................ 21

United States v. Moreno-Godoy, No. 07 Cr. 354 (JSR) (GWG),
2014 U.S. Dist. LEXIS 37576 (S.D.N.Y. Mar. 20, 2014) ..................................................... 17, 24

United States v. Muja, No. 08-5920-CR, 365 Fed. Appx. 245 (2d Cir. Feb. 11, 2010) .......... 8, 13

United States v. Nappy, No. 94 Cr. 656 (LMM),
2010 U.S. Dist. LEXIS 119695 (S.D.N.Y. Nov. 5, 2010) ...................................................... 17, 24

United States v. Nazario, No. 04 Cr. 796 (DAB),
2006 U.S. Dist. LEXIS 85221 (S.D.N.Y. Nov. 17, 2006) ........................................................ 14

United States v. Owen, 500 F.3d 83 (2d Cir. 2007) ............................................................. 3, 5, 8

United States v. Rigas, 583 F.3d 108 (2d Cir. 2009) ................................................................ 4

United States v. Rommy, 506 F.3d 108 (2d Cir. 2007) ............................................................. 22

United States v. Sanchez, 969 F.2d 1409 (2d Cir. 1992) ........................................................... 3

United States v. Sasso, 59 F.3d 341 (2d Cir. 1995) ........................................................ 3

United States v. Seijo, 514 F.2d 1357 (2d Cir. 1975) .................................................... 14

United States v. Slutsky, 514 F.2d 1222 (2d Cir. 1975) ............................................ 9, 25

United States v. Stewart, 433 F.3d 273 (2d Cir. 2006) ................................... 3, 12, 13, 14

United States v. Toscanino, 500 F.2d 267 (2d Cir. 1974) ....................................... 18, 20

United States v. Umeh, et al., 762 F. Supp. 2d 658 (S.D.N.Y. 2011) .................................. passim

United States v. Umeh, et al., Nos. 11-3254-cr, 11-3898-cr,
527 Fed. Appx. 57  (2d Cir. June 10, 2013) .......................................................... 17, 21

United States v. Viertel, No. 01 Cr. 571 (JGK),
2005 U.S. Dist. LEXIS 8127 (S.D.N.Y. May 5, 2005) ................................................ 9

United States v. Wallach, 935 F.2d 445 (2d Cir. 1991) ................................................ 14

United States v. White, 972 F.2d 16 (2d Cir. 1992) ...................................................... 24

United States v. Witasick, No. 07 Cr. 30 (JLK),
2014 U.S. Dist. LEXIS 47713 (W.D. Va. Apr. 7, 2014)  ............................................. 5

United States v. Yarmoluk, 993 F. Supp. 206 (S.D.N.Y. 1998) ............................... 16, 24

United States v. Yunis, 681 F. Supp. 909 (D.D.C. 1988), ........................................... 20

United States v. Zabaneh, 837 F.2d 1249 (5th Cir. 1988) ........................................... 21

United States v. Zagari, 111 F.3d 307 (2d Cir. 1997) .................................................... 9

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
                                       :

UNITED STATES OF AMERICA,

                                       :       S9 09 Cr. 524 (JSR)

           - v. -

                                       :

KONSTANTIN YAROSHENKO,

                                       :

                 Defendant.

                                       :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

**MEMORANDUM OF LAW OF THE UNITED STATES OF AMERICA
IN OPPOSITION TO DEFENDANT'S MOTION FOR A NEW TRIAL**

**PRELIMINARY STATEMENT**

       The Government respectfully submits this opposition to defendant Konstantin Yaroshenko's motion for a new trial pursuant to Rule 33 of the Federal Rules of Criminal Procedure.  The defendant claims he should be granted a new trial on the basis of newly discovered evidence.  The defendant's motion, however, is merely an attempt to re-litigate legal issues already decided by this Court, despite the fact that none of the proffered newly discovered evidence alters the outcomes of those decisions.  What's more, the proffered evidence is not "newly discovered," is not material, and would not "likely lead to acquittal."  Therefore, for the reasons set forth below, the defendant's motion should be denied.

**STATEMENT OF FACTS**

       On April 28, 2011, after a jury trial, the defendant was convicted of conspiring to import into the United States more than five kilograms of cocaine, in violation of 21 U.S.C. § 963.[1]  The Government's proof at trial consisted of, among other things: (1)

---

[1]     Defendant was tried alongside three co-defendants: Nathaniel French, Kudugia Mawuko, and Chigbo Umeh.  Umeh was also convicted at trial.  French and Mawuko were acquitted.

evidence that the defendant had been involved in the international smuggling of narcotics for many years (GX 300T-11; GX300T-29); (2) the testimony of a confidential informant of the Drug Enforcement Administration ("DEA") that he introduced the defendant to "Nabil Hage," another DEA confidential source, after the defendant contacted him in response to an advertisement seeking an airplane modified in a way useful for the transport of narcotics (Tr. 355-71); (3) recordings of March 2010 meetings between the confidential informant and the defendant, and between the confidential informant, the defendant, and Hage, which included discussions of the transport of cocaine from Colombia to Africa and, ultimately, to the United States (GX 300T-14, GX 300T-16, GX 300T-18); (4)  the testimony of Hage that he introduced the defendant to Chigbo Umeh, the leader of a drug trafficking organization, in response to Umeh's inquiries regarding pilots and aircraft available to assist with the movement of 4,000 kilograms of cocaine (Tr. 598-604); (5) a recording of the initial meeting between Umeh, Hage, and the defendant in which they discussed plans for transporting the cocaine and the price for the defendant's transport services (GX 300T-29); and (6) documents demonstrating the price the defendant charged for flights to transport cocaine and a contract for the aircraft the defendant planned to use to transport cocaine for Umeh (Tr. 392-93; GX 216).  The defendant declined to offer any defense case.

---

Prior to trial, the defendant moved to dismiss the Indictment on the basis of, inter alia, allegedly outrageous government conduct and to suppress recorded evidence of meetings involving the defendant.  On November 29, 2010, this Court issued an Order denying the defendant's motions; an Opinion setting forth this Court's reasoning followed on January 3, 2011.

On September 24, 2011, the defendant was sentenced to 240 months'
imprisonment, to be followed by five years' supervised release, and the payment of a $100
special assessment.  On September 21, 2011, the defendant filed a notice of appeal challenging
the judgment of conviction.  On June 10, 2013, the Second Circuit affirmed the judgment.

## APPLICABLE LAW

Rule 33 of the Federal Rules of Criminal Procedure provides, in relevant part, that
"[u]pon the defendant's motion, the court may vacate any judgment and grant a new trial if the
interest of justice so requires."  Fed. R. Crim. P. 33(a).  "[M]otions for a new trial are
disfavored[.]"  United States v. Gambino, 59 F.3d 353, 364 (2d Cir. 1995).  While district courts
have "broad" discretion to grant Rule 33 relief, United States v. Stewart, 433 F.3d 273, 296 (2d
Cir. 2006), the Second Circuit has cautioned that they should do so "'sparingly,'"
United States v. Ferguson, 246 F.3d 129, 134 (2d Cir. 2001) (quoting United States v. Sanchez,
969 F.2d 1409, 1414 (2d Cir. 1992)), and only "'with great caution and in the most extraordinary
circumstances,'" Stewart, 433 F.3d at 296 (quoting Sanchez, 969 F.2d at 1414).  Thus, a motion
for a new trial should not be granted unless, after evaluating "the entire record of the trial," the
district court is left with a "real concern that an innocent person may have been convicted" and
"letting a guilty verdict stand would be a manifest injustice." Ferguson, 246 F.3d at 134; accord
United States v. Canova, 412 F.3d 331, 349 (2d Cir. 2005).

The defendant bears the burden of showing a new trial is warranted.  United
States v. Sasso, 59 F.3d 341, 350 (2d Cir. 1995).  When a defendant moves for a new trial on the
basis of newly discovered evidence, he must demonstrate: that "'the evidence could not with due
diligence have been discovered before or during trial, that the evidence is material, not
cumulative, and that admission of the evidence would probably lead to an acquittal.'"  United

3

States v. Owen, 500 F.3d 83, 87 (2d Cir. 2007) (quoting United States v. Alessi, 638 F.2d 466,

479 (2d Cir. 1980)).

## ARGUMENT

The defendant relies upon the following evidence in support of his motion for a

new trial: (1) an unsworn statement by an individual claiming to be an officer of the Republic of

Liberia National Security Agency ("RLNSA"), describing the circumstances of the defendant's

arrest and detention in Liberia (Br. Ex. A); (2) unsworn statements by four individuals claiming

to be current or former employees of the Royal Hotel in Monrovia, Liberia describing the

circumstances of the defendant's arrest (Br. Ex. B-E); (3) correspondence from a Russian

diplomatic officer stationed at the Russian Embassy in Ghana regarding consular notification of

the defendant's arrest (Br. Ex. F); (4) correspondence from the Office of the Prosecutor General

in the Ukraine regarding recordings made of the defendant and others in the Ukraine (Br. Ex. G-

H); and (5) affidavits of co-defendant Chigbo Umeh regarding the nature and scope of his

conspiracy with the defendant (Br. Ex. I-K).

## I.      The Evidence Presented is Not "Newly Discovered"

Evidence that could have been discovered by counsel, in the exercise of due

diligence, before or during trial—even that which is "newly available" after trial—is not "newly

discovered" and may not be the basis for granting a new trial pursuant to Rule 33.  United States

v. Rigas, 583 F.3d 108, 125 (2d Cir. 2009); United States v. Canova, 412 F.3d 331, 349 (2d Cir.

2005).  All of the evidence proffered by the defendant in support of the instant motion deals with

matters of which he was aware and about which he could have collected evidence before trial;

that this evidence is available to the defendant now—whether because of late-expended efforts

by counsel or the belated statements of Umeh—does not justify overturning the jury's verdict.

**A.      Evidence Related to the Investigation and Arrest of the Defendant**

The defendant submits as "newly discovered evidence" several unsworn statements of individuals in Liberia addressed to the circumstances of the defendant's arrest and expulsion, including with regard to the scope of the involvement of U.S. officials and the claimed mistreatment of the defendant upon his arrest.  (Br. Ex. A-E.)

Evidence that deals with matters known to the defendant and about which the defendant could have, with due diligence, sought evidence prior to or during trial cannot properly be considered "newly discovered."  See United States v. Owen, 500 F.3d 83, 91 (2d Cir. 2007) (finding that it "cannot be true" that defendant was unaware his co-defendant could provide exculpatory information because defendant "was clearly aware of what he did and [that he] did not speak" with his co-defendants on the relevant days); see also United States v. Witasick, No. 07 Cr. 30 (JLK), 2014 U.S. Dist. LEXIS 47713, at *10-13 (W.D. Va. Apr. 7, 2014) (finding the statement of an "unsolicited witness" not to be newly discovered evidence because, in part, there was "no evidence" that the subject matter of the statement "was unknown to Defendant or that Defendant was somehow prevented from securing his testimony").

The defendant does not claim—nor could he—that he was unaware of the circumstances of his own arrest, including the potential presence of witnesses in Liberian law enforcement or on the staff of the hotel at which he was staying, such that he could not have discovered these statements before or during trial.  Having been present for his own arrest and detention, the defendant should have been aware that witnesses might have been able to provide evidence relevant to the claims he asserted in seeking to dismiss the Indictment; as a result, he cannot now claim that he was unable uncover this evidence prior to or during trial.  See Owen, 500 F.3d at 91; Witasick, 2014 U.S. Dist. LEXIS 47713, at *10-13.

The defendant also submits correspondence from a Russian diplomatic officer addressed to the lack of notification of the Russian Consulate in Liberia of the defendant's arrest, as well as correspondence from the Ukrainian Prosecutor General asserting that the government did not obtain permission to engage in the recording of the defendant in the Ukraine.  The defendant was demonstrably aware of these issues prior to trial, as evident by the fact that he litigated them in seeking to dismiss the Indictment and to suppress evidence.  See Def. Mem. of Law In Support of Motion to Dismiss, at *7-12 (Dkt. 58) (October 13, 2010) (hereinafter, "Def. MTD Br.").

Indeed, the factual issues addressed by all of the statements the defendant claims as "newly discovered" evidence were central to the pre-trial proceedings.  Each of these issues was raised, in turn, in support of the defendant's pre-trial motions to dismiss and to suppress. See Def. MTD Br. at *2-12 (seeking to dismiss the Indictment  and suppress evidence based on allegations of government misconduct, including the government's alleged "violent and inhumane treatment" and "plain kidnapping" of the defendant, the recording of the defendant "in violation of the laws of Ukraine," and the failure to "notify Russia" of his arrest); see also United States v. Umeh, et al., 762 F. Supp. 2d 658, 660-65 (S.D.N.Y. 2011) (denying the defendant's motions to dismiss and to suppress).  Having raised these issues prior to trial, the defendant cannot now claim he was unable to discover that witnesses familiar with these events existed and may have been able to provide evidence.  Nor should the defendant be permitted to use the guise of a Rule 33 motion to re-litigate issues already decided by this Court.

The defendant's only explanation as to why his prior counsel could not have, in the exercise of due diligence, unearthed this purportedly "newly discovered" evidence is his assertion that to do so would have taken too much time and required the expenditure of funds

and international expertise he claims his prior counsel did not have.[2]  But from the beginning,

this case obviously involved issues relating to cross-border law enforcement efforts.  The

defendant and his counsel had full knowledge that these issues would impact his case.  The

defendant has never—at any time—claimed that he received ineffective assistance of counsel.

Having made the strategic choice not to pursue certain evidentiary leads and to mount a defense

based on other facts and arguments or having failed to exercise due diligence in attempting to

locate this evidence before or during trial, the defendant cannot now seek a new trial pursuant to

Rule 33.  See United States v. Lombardi, 524 F. Supp. 182, 185 (E.D.N.Y. 1981) (denying a

motion for new trial based, in part, on failure to exercise due diligence in locating the alleged

perpetrator when the defendant's identity was an issue at trial); see also United States v. Klein,

No. 03 Cr. 813 (LBS), 2007 U.S. Dist. LEXIS 58339, at *4-6 (S.D.N.Y. Aug. 7, 2007) (denying

a motion for a new trial because the failure to undertake the effort and expense of securing expert

testimony was a "strategic choice" amounting to lack of diligence).

### B.    Statements of Co-Defendant Umeh

In seeking a new trial, the defendant also relies upon affidavits of his

co-defendant Chigbo Umeh.  The defendant claims this evidence is newly discovered because:

(1) his attorney could not, as a matter of professional ethics, speak to Umeh before trial; (2) he

and Umeh were detained in separate facilities; and (3) he knew little about Umeh and had met

---

[2]      With regard to the correspondence from the Ukrainian Prosecutor General only, defendant claims that he could not have discovered this evidence earlier because his "defense team was told in no uncertain terms that the DEA obtained authorization from the government in Kiev to conduct a special operation against defendant in Ukraine."  (Br. at 23.)  Defendant's claim that this prevented his prior counsel from discovering statements of the Ukrainian Prosecutor General is belied by the fact that he argued before this Court in his pre-trial motion to dismiss that the government did not obtain appropriate authorization, Def. MTD Br. at 8-9. Moreover, defendant admits that his prior counsel did attempt to secure such evidence, (Br. at 30), demonstrating that it was not "newly discovered" after trial.

him only twice prior to trial.  (Br. at 40.)

   The Second Circuit made clear in <u>Owen</u> that where "a defendant knew or should have known, that his codefendant could offer material testimony as to defendant's role in the charged crime, the defendant cannot claim that he 'discovered' that evidence only after trial," even if the codefendant was unavailable to testify at trial, for example because he invoked his right not to testify.  500 F.3d at 89, 91; <u>see</u> <u>also</u> <u>United States</u> v. <u>Muja</u>, No. 08-5920-CR, 365 Fed. Appx. 245, at *3-4 (2d Cir. Feb. 11, 2010) (rejecting arguments that codefendant's statements were newly discovered based on the fact that codefendant was represented at trial and detained in a separate facility because "a co-defendant's mere unavailability cannot transform evidence that 'existed all along' into 'newly discovered' evidence'") (quoting <u>United States</u> v. <u>Jacobs</u>, 475 F.2d 270, 286 n. 33 (2d Cir 1973)).  Such evidence, the court noted, is "not newly discovered, but merely newly available."  <u>Owen</u>, 500 F.3d at 89.

   In <u>Owen</u>, the Second Circuit held that post-trial statements by a co-defendant regarding Owen's lack of involvement in the charged conspiracy were not grounds for a new trial because the statements did not constitute newly discovered evidence.  <u>Id.</u> at 86-87, 92.  The court held that it "cannot be true" that Owen was unaware of his codefendant's ability to exculpate him, as he was "clearly aware of what he did and [that] he did not speak with [his co-defendants] on the days in question."  <u>Id.</u> at 91.  Here, the defendant must also have been aware of his claimed lack of contact with Umeh and, as a result, of Umeh's purported ability to exculpate him of his involvement in the charged drug trafficking conspiracy.  That Umeh's testimony may have been unavailable at the time of trial does not mean it is newly discovered such that it may be grounds for a new trial.  <u>See</u> <u>Owen</u>, 500 F.3d at 91; <u>Muja</u>, 365 Fed. Appx. at *3-4 (co-conspirator's statements that he had never met defendant not newly discovered

evidence because defendant was aware he was charged with his co-conspirator and knew they had not met during the pendency of the conspiracy).

## II.   The Evidence Presented Is Not Material

Even if the evidence proffered on the instant motion was "newly discovered"—which it is not—the defendant's motion fails because the evidence is not material.  The standard for materiality on a Rule 33 motion is high:  whether or not the "newly discovered" evidence would "'probably produce a different verdict.'"  United States v. Viertel, No. 01 Cr. 571 (JGK), 2005 U.S. Dist. LEXIS 8127, at *16 (S.D.N.Y. May 5, 2005) (quoting United States v. Slutsky, 514 F.2d 1222, 1225 (2d Cir. 1975)); see also United States v. Zagari, 111 F.3d 307, 322 (2d Cir. 1997) (requiring that the "evidence is so material and noncumulative that its admission would probably lead to an acquittal") (internal quotation omitted).

### A.   The Defendant's Motions to Dismiss the Indictment and Suppress Evidence

The defendant's motion to dismiss as a result of claimed outrageous government conduct was based on allegations that he was recorded in violation of international law, abducted by the United States government in violation of Liberian and international law, and beaten and tortured before being brought to the United States.  Def. MTD Br. at 3-7, 9-12.  The defendant also sought to suppress the recordings made in the Ukraine.  Id. at 8-9.  While the Government takes any allegations of abduction, mistreatment, or misconduct very seriously, in this case, the allegations are baseless and unfounded and, moreover, have been previously rejected by this Court, as set forth infra.  In moving for a new trial, the defendant claims that the introduction of the "newly discovered evidence" "would likely result in this Court's granting of [his] motion to dismiss based on outrageous government conduct" insofar as it "significantly fortifies" the allegations proffered when that motion was originally made.  (Br. at 16, 24.)  He also claims that

9

the "newly discovered evidence" would lead this Court to suppress the recordings made in the Ukraine.  (Br. at 29-32.)

This Court, however, was explicit that it assumed, <u>arguendo</u>, that the defendant's allegations were true in denying the defendant's motion to dismiss:

> [E]ven if one accepts all these allegations and assertions as true for purposes of this motion, they still reduce, analytically, to two distinct claims: that Yaroshenko was tortured and beaten in connection with his arrest and detention, and that he was abducted illegally. The law is well settled that neither of these claims warrants dismissal of an indictment.

<u>Umeh</u>, 762 F. Supp. 2d at 661.  This Court similarly assumed the truth of the defendant's allegations in denying his motion to suppress.  <u>Id.</u> at 664-65.  Indeed, all of the underlying factual allegations made in the unsworn statements and correspondence presented as "newly discovered evidence" were also presented to and considered by this Court when the defendant sought to dismiss the Indictment on the basis of outrageous government conduct.

First, the unsworn statements of individuals claiming to be a Liberian law enforcement officer and to be current or former employees of the Royal Hotel suggest, if credited, that American agents may have been present when the defendant was detained and that the defendant may have had a bag placed over his head and been beaten at that time.  (Br. Ex. A-E.)  The defendant himself averred as much in seeking to dismiss the Indictment.  Def. MTD Br. Ex. A (Aff. of Konstantin Yaroshenko) ¶¶ 3-6.  In seeking a new trial, the defendant makes much of the fact that the evidence presented on this motion indicates that he was subject to both "kidnapping and torture," allegedly altering the outrageous government conduct analysis conducted by this Court.  (Br. at 24-25.)  But this Court addressed an identical claim, assuming the facts as alleged by the defendant as true, before trial, holding that the defendant's "motion to dismiss the indictment because of the alleged combination of brutality and abduction fails as a

10

matter of law." Umeh, 762 F. Supp. 2d at 664.

Second, the correspondence from the Russian Embassy in Ghana states that the Russian Consulate in Liberia was not notified upon the defendant's arrest. (Br. Exs. F-G.) In seeking to dismiss the Indictment, the defendant provided to this Court a statement by the Ministry of Foreign Affairs of the Russian Federation noting that "US authorities have not informed the Russian diplomatic missions about Yaroshenko's detention." Def. MTD Br. Ex. B. Moreover, the Government conceded at the time that consular notification was inadvertently sent to the Romanian consulate, instead of the Russian consulate. Govt. Omnibus Mem. Of Law Responding to Defs.' Motions at 19, n. 5, Ex. A (October 27, 2010) (Dkt. 63) (hereinafter, "Govt. MTD Br."). This Court, with all those facts at hand, nevertheless concluded that the defendant's "allegations that the United States violated international law in effectuating his transfer to the United States are irrelevant," noting that even if the treaty on which the defendant relied created "judicially enforceable individual rights"—which it did not—"dismissal of the indictment would not be the appropriate remedy."[3] Umeh, 762 F. Supp. 2d at 664.

Third, the correspondence from the Ukrainian Prosecutor General suggests that the DEA did not seek the permission of the Ukrainian government before engaging in consensual recordings of a DEA informant and the defendant. (Br. Ex. G, H.) The defendant argued in

---

[3]     Defendant claims that the correspondence from the Russian Embassy in Ghana demonstrates a "high degree of likelihood" that the order issued by the Liberian government expelling the defendant was "fabricated or backdated when defendant's trial counsel asked for it in discovery." (Br. at 21.) Defendant's allegation appears to be based on the statement contained in the correspondence to the effect that in June 2010, Russia's Ambassador to Ghana and Liberia "received from the Liberian side the assurance that an immediate investigation into this matter will be commenced . . . ." (Br. Ex. F) Defendant offers no explanation as to how this statement could lead one to conclude that the expulsion order was fabricated or backdated. To the contrary, nothing in the "newly discovered" evidence undermines this Court's conclusion that the expulsion order issued by the Liberian government is "facially valid," Umeh, 762 F. Supp. 2d at 664.

seeking to dismiss the Indictment that the recordings were unlawful based on the Government's alleged failure to obtain the required authorization and submitted an affidavit of a Ukrainian lawyer in support of his contention.  Def. MTD Br. at 8-9, Ex. E.  Nevertheless, this Court held that "even assuming <u>arguendo</u> that the United States failed to obtain such authorization . . . nothing in either Ukrainian law nor the MLAT suggests that violations of these laws gives rise to any right of suppression or other judicially enforceable rights of the defendant in a U.S. court." <u>Umeh</u>, 762 F. Supp. 2d  at 664-65.

      Accordingly, the "newly discovered" statements and correspondence—even if they are to be credited—are not material to this Court's decisions denying the defendant's pre-trial motions to dismiss and to suppress, because this additional evidence would not alter this Court's analyses and would be merely cumulative of allegations already leveled by the defendant and considered by this Court.

      **B.**    **Allegations of Perjury by Government Witnesses**

      The defendant also claims that the "newly discovered evidence" demonstrates that Supervisory Special Agents Sam Gaye and Louis J. Milione of the DEA committed perjury in submitting sworn affidavits, filed in support of the Government's opposition to the defendant's motion to dismiss.  (Br. at 34-25.)  Special Agents Gay and Milione submitted affidavits for the limited purpose of responding to the defendant's unfounded allegations of abduction and abuse. In their affidavits, they set forth the events leading up to the defendant's arrest and transfer to the United States and explained that throughout the time the defendant was in Liberian and U.S. custody, they did not observe any abuse or mistreatment.

      When a Rule 33 motion is predicated upon allegations that newly discovered evidence indicates witnesses committed perjury, "a threshold inquiry is whether the evidence

demonstrates that the witness in fact committed perjury." <u>United States</u> v. <u>Stewart</u>, 433 F.3d

273, 297 (2d Cir. 2006) (internal quotation omitted).   Even if perjury did occur, the granting of a

new trial depends upon whether the matter at issue was material and what the government knew

regarding the perjured testimony.  <u>Id.</u>  Where "the prosecution knew or should have known of the

perjury prior to the conclusion of trial, the conviction must be set aside where there is any

reasonable likelihood that the false testimony could have affected the judgment of the jury." <u>Id.</u>

(internal quotation omitted).  However, "if the prosecution was not aware of the perjury, a

defendant can obtain a new trial only where the false testimony leads to a firm belief that but for

the perjured testimony, the defendant would most likely not have been convicted." <u>Id.</u> (internal

quotation omitted).

   Here, the defendant has not satisfied the threshold inquiry.  In his affidavit,

Special Agent Gaye affirmed that on May 28, 2010, he learned that a confidential source had

called the defendant and asked him to attend a meeting at the headquarters of the RLNSA.  Govt.

MTD Br. Ex. B ¶ 6.  He subsequently directed an RLNSA officer to travel undercover to pick up

the defendant at his hotel and bring him to RLNSA headquarters.  <u>Id.</u> ¶ 7.  When the defendant

arrived, Special Agent Gaye observed that his head was not covered, nor was he handcuffed.  <u>Id.</u>

The defendant was taken to a conference room, where he was arrested by RLNSA officers; he

appeared, at this time, "calm and relaxed." <u>Id.</u>  ¶ 8.  Special Agent Gaye observed the

subsequent search of the defendant, visited RLNSA headquarters multiple times over the next

few days to observe the defendant, and called RLNSA headquarters to confirm the defendant

remained in custody and was being properly guarded and treated appropriately.  <u>Id.</u> ¶¶ 9-10, 13-

14.  Throughout, Special Agent Gaye observed nothing to indicate that the defendant was subject

to abuse or mistreatment.  <u>Id.</u>  Both Special Agents Gaye and Milione attested that the defendant

was taken into DEA custody on May 30, at which time he showed no signs of abuse or mistreatment.  Id. ¶ 15; Ex. C ¶ 8.  On that day, Special Agent Milione travelled with the defendant and others on a bus to Roberts International Airport; after a wait of approximately two hours on an air conditioned bus, the defendant boarded the plane which took him to New York.  Ex. C ¶¶ 10-14.  At no time did Special Agent Milione observe any evidence that the defendant was abused or mistreated.  Id.  In support of his affidavit, Special Agent Milione submitted pictures of the defendant at the time he was taken into DEA custody, on the bus, at the airport, and on the plane; in none of these photos does the defendant appear to be bruised, wounded, or injured consistent with his claims.[4]  Id. at Ex. 1.

The defendant asserts that the conflicting accounts of his arrest offered in the "newly discovered" unsworn statements and in the affidavits of Special Agents Gaye and Milione are sufficient evidence that the Special Agents committed perjury (Br. at 34-35).  This argument flies in the face of long-established Second Circuit precedent, which is clear that "even a direct conflict in testimony does not in itself constitute perjury."  United States v. Gambino, 59 F.3d 353, 365 (2d Cir. 1995); see also United States v. Nazario, No. 04 Cr. 796 (DAB), 2006 U.S. Dist. LEXIS 85221, at *13 (S.D.N.Y. Nov. 17, 2006) ("Perjury is not demonstrated by showing that the testimony of a witness is inconsistent with the statements of another witness.").  The cases upon which the defendant relies are not to the contrary.  In both United States v. Seijo, 514 F.2d 1357 (2d Cir. 1975), and United States v. Wallach, 935 F.2d 445 (2d Cir. 1991), the government conceded that the witnesses in question had committed perjury, leaving the courts to determine only the materiality of the false testimony.  Seijo, 514 F.2d at 1363; Wallach, 935 F.2d

---

[4]      The government also submitted an affidavit of Chito Evangelista, an employee of the Metropolitan Correctional Center, who conducted an initial medical assessment of defendant at intake and determined based on his assessment of defendant's health that he could be admitted to the MCC and housed in the general population.  Ex. D ¶¶ 3, 6-9.

at 455.  In Alvarez v. United States, 808 F. Supp. 1066 (S.D.N.Y. 1992), the court, considering

the allegedly false testimony in context, concluded that "the statements do not rise to the level of

perjury," granting a new trial on other grounds.  Id. at 1084.  Accordingly, the defendant has

failed, as a threshold matter, to prove that perjury has occurred.[5]

### C. Evidence of the Scope and Object of the Narcotics Trafficking Conspiracy

The defendant also argues that the statements contained in the affidavit of his

co-conspirator, Chigbo Umeh, are material and would lead to his acquittal at a new trial because

they (1) set forth the existence of a previously unidentified confidential DEA informant; (2)

indicate Umeh's reluctance to discuss the importation of narcotics into the United States; and (3)

explain Umeh's "total lack of desire" to work with the defendant.  (Br. at 36-37.)

The statements in the proffered affidavits have little to do with the defendant and

his illegal conduct.  Instead, they are directed, in large part, to the existence of a supposed DEA

confidential informant named "Santiago" and to the circumstances of Umeh's involvement with

Liberian government officials.  Umeh asserts without support—save to unspecified DEA

records—that "Santiago" "is working for the D.E.A. Office in Colombia and was injected into

---

[5]     Even if this Court were to conduct an analysis of the materiality of the allegedly perjured
testimony, defendant makes no allegation that the prosecution had knowledge of the alleged
perjured statements and, in any event, cannot prove the materiality of the statements to either
standard required on a motion for a new trial.  As set forth supra, pg. 9-11, this Court assumed,
arguendo, the truth of defendant's allegations regarding his arrest and detention in denying the
motion to dismiss.  Any claimed perjury, then, would not affect the outcome of a renewed
motion to dismiss and could only be used in a vain attempt to impeach Special Agent Gaye, as
Special Agent Gaye did not testify at trial.  Any such attempt would be subject to
corroboration of Special Agent Gaye's account of the events of defendant's arrest by Special
Agent Milione and by the photos and medical examination of defendant; moreover, Special
Agent Gaye was only one of several government witnesses to testify at trial, including other
DEA agents and confidential sources involved in the investigation of defendant.  As such, a new
trial on these grounds is not warranted.  See Canova, 412 F.3d at 349-50 (noting that evidence
which "[a]t best . . . would have afforded defense counsel additional grounds on which to
impeach prosecution witnesses" was "insufficient" to justify a new trial under Rule 33.

the investigation" that led to the instant prosecution.  (Br. Ex. J ¶ 18).  He also indicates that he believes recordings of his meetings with "Santiago" exist because "Santiago" and Nabil Hage carried a similar bag, which he surmises contained recording equipment.  (Br. Ex. I ¶¶ 24-25, 29.)  Umeh also self-servingly claims that he warned Santiago and others of the difficulties of "engag[ing] with drug deals in the U.S.A."  (Br. Ex. I ¶¶ 19-20); see also (Br. Ex. I ¶¶ 22; Ex. J ¶¶ 23-26, 43.)  Of the three declarations of Chigbo Umeh submitted on the instant motion, Umeh addressed the defendant's conduct and involvement in the conspiracy in only three paragraphs. (Br. Ex. I  ¶¶ 26-28.) He conceded having met with the defendant and Nabil Hage in May 2010 and claims that he told Santiago that he had his "own plan of transporting my drugs that is less expensive" than employing Yaroshenko's smuggling services.  (Id. ¶ 28.)

Much of the content of Umeh's declarations—including his alleged May 2010 statement regarding his supposed plan to use a "less expensive" means of transporting narcotics—is precisely the sort of "[s]elf-serving speculations, hearsay, and other inadmissible evidence" that would not be admitted at trial and thus could not be material to the jury's verdict. See United States v. Yarmoluk, 993 F. Supp. 206, 208-209 (S.D.N.Y. 1998) (denying a motion to withdraw a guilty plea pursuant to 28 U.S.C. § 2255 based on affidavits submitted by others involved in defendant's scheme); see also United States v. DeFeo, No. 90 Cr. 250 (MJL), 1996 U.S. Dist. LEXIS 22523, at *25 n. 13 (S.D.N.Y. Dec. 27, 1996) (denying Rule 33 motion where "newly discovered evidence" consisted of "hearsay statements . . . inadmissible at trial").

Moreover, to the limited extent Umeh's statements might be admissible at a trial of the defendant, those statements lack credibility, particularly in the face of conflicting evidence adduced at trial.  Umeh's claims, for example, that he is aware of an unidentified DEA informant—Santiago—who recorded his conversations on multiple occasions are submitted

without any factual support or justification.  Moreover, Umeh's assertions that he warned others of the dangers of transporting drugs to the United States and had plans to transport the drugs other than working with the defendant are directly in conflict with the evidence introduced at trial on these points.  With regard to the former, the evidence at trial included recordings of meetings between DEA informants, including Nabil Hage, and the defendant in which the defendant discussed transporting narcotics to the United States, (GX 300T-14, GX 300T-16, GX 300T-18), and a recording of the May 2010 meeting between Umeh, Hage, and the defendant in which they discussed using a U.S. airline to carry narcotics into this country, (GX 3007-29).[6] With regard to the latter, the evidence included testimony by Hage regarding a meeting between the defendant and Umeh at which the two agreed on the details and price of the defendant's smuggling for Umeh (Tr. 598-604); a recording of said meeting between Umeh, Hage, and the defendant in which they discussed plans for transporting cocaine and the price for the defendant's transport services (GX 300T-29); and documents demonstrating the price the defendant charged for flights to transport cocaine and a contract for the aircraft the defendant planned to use to transport cocaine for Umeh (Tr. 392-93; GX 216).[7]

        In the face of this evidence, a "reasonable jury" would be "extremely unlikely" to afford Umeh's statements—to the extent admissible at all—material weight.  See United States v. Moreno-Godoy, No. 07 Cr. 354 (JSR) (GWG), 2014 U.S. Dist. LEXIS 37576, at *111-12 (S.D.N.Y. Mar. 20, 2014) (recommending denial of motion to vacate conviction pursuant to 28 U.S.C. § 2255 based, in part, on "newly discovered evidence" consisting of co-defendant's

---

[6]    The sufficiency of this evidence was briefed extensively on appeal, United States v. Umeh, et. al., Nos. 11-3254-cr, 11-3898-cr, Govt. Br. at 12-14, and noted by the Second Circuit in its decision affirming the conviction, 527 Fed. Appx. 57 at *5-6 (2d Cir. June 10, 2013).

[7]    Similarly, the sufficiency of this evidence was briefed on appeal, Govt. Br. at 10-12, and noted by the Second Circuit, 527 Fed. Appx. 57 at *4-5.

statements); see also United States v. Nappy, No. 94 Cr. 656 (LMM), 2010 U.S. Dist. LEXIS

119695, at *5-8 (S.D.N.Y. Nov. 5, 2010) (denying motion for a new trial based on newly

discovered evidence where said evidence "is contradicted by the evidence adduced at trial").

### III.    The Admission of the Evidence Would Not Lead to Acquittal

The "newly discovered" evidence upon which the defendant relies in seeking a

new trial is, as set forth supra, neither newly discovered, nor material.  The defendant has also

failed to satisfy the last prong of a Rule 33 analysis, that if the evidence were admitted, it would

lead to his acquittal.  The defendant's attempts to make this showing are, in the main,

restatements of arguments he has already made—and lost—before this Court and on appeal.[8]

#### A.    The Defendant's Claims of "Outrageous Government Conduct"

The defendant's primary argument in seeking a new trial is that the newly

discovered evidence would alter this Court's analysis of his pre-trial motion to dismiss.  As set

forth supra, pgs. 9-11, this Court assumed, arguendo, that the defendant's allegations—which he

attempts to buttress with this new evidence—were true in denying the defendant's motion to

dismiss.  Umeh, 762 F. Supp. 2d at 661.  Nothing in the "newly discovered" evidence would

alter this Court's legal analysis.

The defendant continues to argue—as he did before this Court prior to trial and

---

[8]    To the extent defendant is using the instant motion not to present "newly discovered
evidence" but, instead, to further challenge his conviction, his motion may more appropriately be
considered a petition pursuant to 28 U.S.C. § 2255.  See Ruth v. United States, 266 F.3d 658,
660-61 (7th Cir. 2001) ("A Rule 33 motion must be considered a collateral attack for purposes of
§ 2255 para. 8, the provision governing successive habeas corpus filings, when the substance of
the motion falls within the scope of § 2255 para. 1.").  This Court may recharacterize defendant's
motion as made under § 2255 if defendant "with knowledge of the potential adverse
consequences of such recharacterization, agrees to have the motion so recharacterized" or if this
Court "finds that, notwithstanding its designation, the motion should be considered as made
under § 2255 because of the nature of the relief sought, and offers the movant the opportunity to
withdraw the motion rather than have it so recharacterized."  Adams v. United States, 155 F.3d
582, 584 (2d Cir. 1998).

again before the Second Circuit—that <u>United States</u> v. <u>Toscanino</u>, 500 F.2d 267 (2d Cir. 1974),

remains good law and requires dismissal of the Indictment.  (Br. at 24-17.)  To the extent the

defendant is using the instant motion to challenge this Court's application of the law, (Br. at 25)

("Contrary to this Court's earlier opinion, the rule in <u>Toscanino</u> continues to have legal effect,

and the appellate court's decision not to abrogate <u>Toscanino</u> in its opinion issued in Konstantin

Yaroshenko's case is indicative of the value that precedent still has[.]"), his motion is untimely.

Fed. R. Crim. P. 33(b)(2) ("Any motion for a new trial grounded on any reason other than newly

discovered evidence must be filed within 14 days after the verdict or finding of guilty.").

   The defendant's argument urging dismissal under <u>Toscanino</u> is also unavailing.

The law is well-settled that neither police brutality nor abduction by government agents will lead

to a due process violation sufficient to warrant dismissal of an Indictment.  <u>See</u> <u>Frisbie</u> v.

<u>Collins</u>, 342 U.S. 519, 522 (1952) ("[T]he power of a court to try a person for [a] crime is not

impaired by the fact that he had been brought within the court's jurisdiction by reason of a

'forcible abduction.'") (citing <u>Ker</u> v. <u>Illinois</u>, 119 U.S. 436, 444 (1886)); <u>see also</u> <u>United States</u> v.

<u>Alvarez–Machain</u>, 504 U.S. 655, 660–62, 670 (1992) ("The fact of respondent's forcible

abduction does not therefore prohibit his trial in a court in the United States for violations of the

criminal laws of the United States"); <u>Brown</u> v. <u>Doe</u>, 2 F.3d 1236, 1423 (2d Cir. 1993)

(concluding that due process did not bar prosecution where defendant had been beaten severely

by the police).  This line of cases further stands for the proposition that the dismissal of criminal

charges is not the appropriate remedy for due process violations.  <u>Brown</u>, 2 F.3d at 1243 ("[T]he

purpose of such a remedy cannot be to relieve a criminal of punishment for the crime or crimes

committed as compensation for wrongs done by representatives of the institutions of society.")

(internal quotation omitted); <u>see also</u> <u>Matta-Ballesteros</u> v. <u>Henman</u>, 896 F.2d 255, 261 (7th Cir.

1990) ("The remedy, however, for violations of the due process clause during pre-trial detention is not the divestiture of jurisdiction, but rather an injunction or money damages.").

        The defendant's contention on the instant motion boils down to the argument that because he alleges that he was both beaten and abducted, Toscanino applies, an issue briefed extensively on the motion to dismiss.[9]  In Toscanino, the defendant appealed his conviction, arguing that he was assaulted in front of his wife and then kidnapped by U.S. agents in Uruguay, absent any extradition request to Uruguayan authorities; Toscanino further claimed that he was subjected to illegal surveillance, tortured, interrogated, and drugged, before being abducted to the United States.  500 F.2d at 269-70.  In a decision issued more than forty years ago, the Second Circuit remanded the case for an evidentiary hearing, citing the "erosion" of the Ker-Frisbie doctrine articulated by the Supreme Court.  Id. at 273-76.  Since that time, the Supreme Court has repeatedly reaffirmed the Ker-Frisbie doctrine, see, e.g., Alvarez-Machain, 504 U.S. at 660-62; United States v. Crews, 445 U.S. 463, 474 (1980), and the Second Circuit has refused to grant relief to defendants seeking dismissal of charges based on both alleged abductions and physical mistreatment, see, e.g., Brown, 2 F.3d at 1243; United States ex rel. Lujan v. Gengler, 510 F.2d 62, 68 (2d Cir. 1975).  Moreover, as this Court noted in denying the defendant's motion to dismiss, "'no court has ever applied [Toscanino] to dismiss an indictment.'"  Umeh, 762 F. Supp. 2d at 663 (quoting United States v. Yunis, 681 F. Supp. 909, 919 (D.D.C. 1988), rev'd on other grounds, 859 F.2d 953 (D.C. Cir. 1988)) (emphasis in the original).

        The Second Circuit directly addressed the application of Toscanino to the

---

[9]    The defendant also argues that the failure to properly notify the Russian Consulate in Liberia of his arrest supports his motion to dismiss the Indictment.  (Br. at 21, 24.)  This Court's analysis in denying the original motion controls and is not altered by the "newly discovered evidence," which merely confirms facts this Court already assumed for the purposes of argument. See Umeh, 762 F. Supp. 2d  at 664

defendant's case in affirming this Court's denial of the motion to dismiss, finding that "our precedent makes plain that [Toscanino] does not foreclose prosecution in factual circumstances similar to those alleged by Yaroshenko."  United States v. Umeh, et. al., Nos. 11-3254-cr, 11-3898-cr, 527 Fed. Appx. 57 at *16-17 (2d Cir. June 10, 2013).  While the Second Circuit did not have the "newly discovered evidence" before it, it credited the defendant's allegations, for the purposes of argument, in concluding that Toscanino did not apply.  See id.  The addition of "newly discovered evidence" in support of those allegations would not, therefore, alter the legal analysis of this Court or the Second Circuit.

The defendant also argues that the "newly discovered evidence" would lead to the dismissal of the Indictment because it demonstrates that DEA agents violated the Mansfield Amendment.  (Br. at 27.)  The Mansfield Amendment provides that "[n]o officer or employee of the United States may directly effect an arrest in any foreign country as part of any foreign police action with respect to narcotics control efforts, notwithstanding any other provision of law." 22 U.S.C. § 2291(c)(1).  Here, of course, Special Agents Gaye and Millione have affirmed that the defendant was arrested by Liberian authorities and only later taken into DEA custody, making the Mansfield Amendment inapplicable.  See United States v. Mejia, 448 F.3d 436 (D.C. Cir. 2006) (Mansfield Amendment "not applicable" where the defendant was arrested by Panamanian authorities "long before the DEA arrived").  Indeed, two of the unsworn statements proffered by the defendant confirm that RLNSA officials arrested the defendant at his hotel.  (Br. Ex. B, C.)  However, even if the remaining "newly discovered" statements offering a conflicting account of the defendant's arrest are credited, dismissal of the Indictment is not the appropriate remedy.  See United States v. Zabaneh, 837 F.2d 1249, 1261 (5th Cir. 1988) ("Congress has not provided sanctions or penalties by way of relief for persons arrested in contravention of § 2291(c)(1). . .

21

.[T]he district court had jurisdiction to try appellant under the indictment charged, even if he was abducted by government agents or others from Guatemala to the United States."); <u>see</u> <u>also</u> <u>United States</u> v. <u>Bourdet</u>, 477 F. Supp. 2d 164, 175 (D.D.C. 2007) (noting that the Mansfield Amendment "is silent as to remedies for its breach, and no court has ever implied a remedy for a defendant alleging its violation"); <u>United States</u> v. <u>Bridgewater</u>, 175 F. Supp. 2d 141, 146 (D.P.R. 2001) ("The Mansfield Amendment regulates government action prescriptively; it does not provide repercussions for violations of the Amendment.  A dismissal of the indictment is an unwarranted remedy under the Mansfield Amendment.") (internal citations omitted).

### B.       Suppression of Recordings Made in the Ukraine

The defendant also argues that the newly discovered evidence would alter this Court's analysis of his pre-trial motion to suppress.  This Court assumed the truth of the defendant's allegations in denying his motion to suppress before trial, <u>Id.</u> at 664-65, and the "newly discovered" evidence does not affect this Court's reasoning.

The law in the Second Circuit is clear that "[t]he admissibility of evidence in a United States Court depends solely on compliance with United States law."  <u>United States</u> v. <u>Rommy</u>, 506 F.3d 108, 129 (2d Cir. 2007).  The recordings at issue here were made by a confidential informant of his own meetings with the defendant; accordingly they do not constitute a "search" under the Fourth Amendment, nor do they otherwise implicate the defendant's privacy interests.  <u>See</u> <u>Lopez</u> v. <u>United States</u>, 373 U.S. 427, 439 (1963).  Because the recordings are admissible under U.S. law, it is irrelevant whether the recordings were permissible under Ukrainian law.  <u>See, e.g.</u>, <u>United States</u> v. <u>Andreas</u>, No. 96 Cr. 762 (BMM), 1998 U.S. Dist. LEXIS 1014 , at *10-11 (N.D. Ill. Jan. 30, 1998) (denying motion to suppress consensual recordings made in Japan, allegedly in violation of Japanese law, because

"admissibility is ultimately determined by U.S. standards").

On the instant motion, the defendant renews his arguments—already rejected by this Court—that the recordings were obtained in violation of the Mutual Treaty on Legal Assistant ("MLAT") between the U.S. and the Ukraine and in violation of Ukrainian law.  (Br. at 31-33); see also Umeh, 762 F. Supp. 2d at 664 (finding that "nothing in either Ukrainian law nor the MLAT suggests that violations of these laws gives rise to any right of suppression or other judicially enforceable rights of the defendant in a U.S. court").  Rather than even attempt to argue that the recordings were obtained in violation of U.S. law—which they were not—the defendant suggests they should be excluded because they were obtained in a way that was "shocking to the conscience."  (Br. at 32.)  In support of this argument, the defendant relies upon United States v. Maturo, 982 F.2d 57 (2d Cir. 1992).  (Br. at 32.)  In Maturo, however, the Second Circuit noted that "evidence obtained in a foreign jurisdiction may be excluded . . . where the conduct of *foreign officials* in acquiring the evidence is 'so extreme that they shock the judicial conscience[.]'"  982 F.2d at 60 (quoting Stowe v. Devoy, 588 F.2d 336, 341 (2d Cir. 1978)) (emphasis added).  This rule, which addresses the conduct of foreign—not U.S.—officials was designed to address problems that might arise from the fact that "the Fourth Amendment exclusionary rule does not apply to arrests and searches made by foreign authorities on their home territory and in the enhancement of foreign law."  Stowe, 588 F.2d at 341.  Thus, it does not apply here, where U.S. officials worked with a confidential informant to consensually record meetings in full compliance with U.S. law.

### C.     The Sufficiency of the Evidence at Trial

None of the "newly discovered evidence" proffered by the defendant would be likely to lead to an acquittal at a new trial.  Indeed, of the "newly discovered evidence," only the

statements of the defendant's co-conspirator, Chigbo Umeh, are addressed to elements of the charged offenses.[10]   As set forth <u>supra</u>, pgs. 16-17, those statements are, for the most part, inadmissible speculation and hearsay.   <u>See</u> <u>Yarmoluk</u>, 993 F. Supp. at 208-209; <u>DeFeo</u>, 1996 U.S. Dist. LEXIS 22523, at *25 n. 13.   Even if admitted, Umeh's statements regarding defendant's role in the charged conspiracy and the nexus of the charged conspiracy with the United States would not be likely to lead to an acquittal in the face of the substantial evidence that the defendant conspired with Umeh to transport cocaine and that he knew a portion of said cocaine would go to the United States.   As set forth <u>supra</u>, pgs. 17-18, this evidence includes, among other things, a recording of discussions between Umeh, Hage, and the defendant in which the defendant discussed the transport of cocaine by flight, including appropriate pretexts, and plans to carry narcotics into the United States, and in which the defendant indicated he expected to be paid a certain price, to which Umeh agreed (GX 300T-29).   In the face of this evidence, a "reasonable jury" would be "extremely unlikely" to acquit the defendant based on the "newly discovered evidence."   <u>See</u> <u>Moreno-Godoy</u>, 2014 U.S. Dist. LEXIS 37576, at *111-12; <u>Nappy</u>, 2010 U.S. Dist. LEXIS 119695, at *5-8.   Moreover, the overwhelming evidence presented at trial leaves no "real concern" that letting the jury's verdict stand would be "a manifest injustice." <u>See</u> <u>Ferguson</u>, 246 F.3d at 134.

## IV.   <u>An Evidentiary Hearing is Not Necessary</u>

The defendant seeks an evidentiary hearing on the instant motion.   (Br. at 42.) The decision to hold an evidentiary hearing is within the discretion of the district court.   <u>United</u>

---

[10]     Defendant does not suggest that he would seek to introduce the remaining "newly discovered evidence" at a new trial for any purpose other than to impeach government witnesses. As discussed <u>supra</u>, pg. 15, n. 6, the only government witness whose testimony might be impeached by the "newly discovered evidence" is Special Agent Gaye, whose account of defendant's arrest by Liberian officials and detention at RLNSA headquarters is corroborated by the affidavit of Special Agent Milione and by the photos and medical examination of defendant.

States v. White, 972 F.2d 16, 22 (2d Cir. 1992).  "No hearing is required on a new trial motion if

'the moving papers themselves disclosed the inadequacies of the defendants' case, and the

opportunity to present live witnesses would clearly have been unavailing.'"  United States v.

Helmsley, 985 F.2d 1202, 1209-10 (2d Cir. 1993) (quoting United States v. Slutsky, 514 F.2d

1222, 1226 (2d Cir. 1975)).  For the reasons set forth above, this motion is deficient, and a

hearing is unnecessary.  See United States v. Ghavami, No. 10 Cr. 1217 (KMW), 2014 U.S. Dist.

LEXIS 67124, at *22-23 (S.D.N.Y. May 15, 2014) (denying an evidentiary hearing on a Rule 33

motion where the court's decision "does not rest on choosing between competing interpretations"

of evidence and "it is unlikely" that testimony would assist the court in its decision).

## CONCLUSION

For the reasons discussed above, the defendant's motion should be denied in its

entirety.


Dated: New York, New York
       July 9, 2014

                                        Respectfully submitted,

                                        PREET BHARARA
                                        United States Attorney for the
                                        Southern District of New York,


                              By: _/s/ Katherine C. Reilly_____
                                        KATHERINE C. REILLY
                                        RANDALL W. JACKSON
                                        Assistant United States Attorneys
                                        (212) 637-6521